**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JYOTSNA OJHA,**

    **Plaintiff,**

v.                                                                                         **Case No.  8:04-cv-2421-T-23TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                                            /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.[1]  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

I.

Plaintiff was fifty-three years of age at the time of her administrative hearing.  She has a high school education.  Her past relevant work was as a credit card solicitor for Montgomery Wards and baker at Sam's Club.  Plaintiff applied for Supplemental Security Income payments in July 2001 (protective filing date), alleging disability as of October 12, 1999, by reason of coronary artery disease, hypothyroidism, gastrointestinal disease with

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  See also M.D. Fla. R. 6.01(c)(21).

bleeding, and neck and left shoulder pain.[2]  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  In essence, Plaintiff testified she has been unable to work since her heart attack in 1999.  Plaintiff said she has continues to have chest pain, which worsens upon exertion, and she experiences constant fatigue.  She wears a nitroglycerin patch every night for 12 hours for her chest pain, but it causes headaches and dizziness.  Plaintiff also suffers from shoulder and neck pain.  She attended physical therapy, but still has difficulty with her shoulder and is unable to raise her hands above shoulder height.  Additionally, Plaintiff testified that she takes seven or eight different medications and she experiences side effects such as dizziness, leg cramps, loss of appetite, body shakes, and headaches.

Plaintiff described limited daily activities.  By her estimate, she can sit for thirty minutes, stand for fifteen to twenty minutes, and walk approximately two blocks before having chest pain.  Plaintiff said that she can bend but not for long, and she is unable to climb stairs. On a typical day Plaintiff wakes up around 9:30 or 10:00 a.m., has tea, prays, naps, sits or lies down the rest of the day, and goes to sleep around 10:00 or 11:00 p.m.  Plaintiff has not driven since her heart attack.  She does not go to the movies or to the park.  She lives with her son and daughter-in-law and they handle all household chores and take her wherever she

---

[2]Plaintiff alleged an inability to work as of October 12, 1999, in her disability report. (R. 91).  However, in her application for Supplemental Security Income payments, Plaintiff reported that her disability began on June 13, 2001. (R. 82).  The discrepancy is not significant here as the relevant period starts with the date of Plaintiff's application.

needs to go. She can read and write in English, but occasionally comes across words she does not understand. Plaintiff stated that she was very active and energetic prior to the heart attack. See Plaintiff's testimony (R. 38-57).

Plaintiff's son, Pranav Ojha, also testified. He has always lived with his mother or she with him. Mr. Ojha confirmed that Plaintiff had a heart attack in 1999 and that he had seen a drastic change in her daily activities. He stated that, prior to her heart attack, Plaintiff would get up early, cook meals, work, run errands, and go to the movies or out to eat with friends. By his testimony, Plaintiff is now unable to drive, suffers from severe headaches and fatigue, and is unable to do anything without assistance. See Mr. Ojha's testimony (R. 58-60).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of April 23, 2004, the ALJ determined that while Plaintiff has severe impairments related to coronary artery disease, a back disorder, a previous myocardial infarction, PTCA (percutaneous transluminal coronary angioplasty) of the first diagonal, hypertension, hyperlipidemia, hypothyroidism, GERD (gastroesophageal reflux disease), and shoulder pain, she nonetheless had the residual functional capacity to perform sedentary exertional work. Upon this finding, the ALJ concluded that Plaintiff could perform her past work as a credit card clerk. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 15-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

4

supported by substantial evidence. <u>Celebrezze v. O'Brient</u>, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. <u>Miles</u>, 84 F.3d at 1400; <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two broad claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner's finding with respect to Mrs. Ojha's credibility is not supported by substantial evidence, nor does it follow the correct legal principles; and

(2) The Commissioner erred in finding that Mrs. Ojha could perform sedentary work and was, therefore, not disabled.

By her first claim, Plaintiff argues that the ALJ's credibility finding is insufficient because he failed to articulate reasons for rejecting her subjective allegations. By Plaintiff's account, her medical conditions and/or the side effects of her medication could reasonably be expected to cause her chest pains, extreme fatigue, severe daily headaches, leg cramps, shaking, dizziness, shoulder and neck pain, back pain, and poor appetite with nausea and the

ALJ erred by failing to credit her allegations of such.  Plaintiff also argues that the ALJ erred by failing to address her son's testimony and explain why it was not credited.  (Doc. 13 at 7-10).

The Commissioner responds that the record supports the ALJ's finding that the medical evidence did not support the level of symptoms alleged.  She responds further that the ALJ did not err by not recounting the testimony of Plaintiff's son because it merely corroborated Plaintiff's own testimony.  (Doc. 14 at 7-10).

Here, the ALJ was clearly aware of the Eleventh Circuit's standard for evaluating complaints of pain and other subjective symptoms as he cited controlling authority on such.  (R. 18).  He also summarily acknowledged that Plaintiff "complained of pain." Id.  Beyond, that, however, the ALJ did not discuss Plaintiff's testimony or the functional limitations to which she testified, and he failed to explain why he did not believe her subjective complaints with respect to pain (chest, shoulder, and neck), constant fatigue, dizziness, and headaches.  Rather, the ALJ's credibility determination consisted of the following:

> [t]he undersigned concludes that the medical evidence supports a finding that the claimant has a condition which could be expected to produce pain, but not to the level alleged.

(R. 18).[3]  In my view, in the circumstances of this decision, this statement is too general to permit meaningful review.  See Marbury v. Sullivan, 957 F.2d 837, 840 n.2 (11th Cir. 1992), Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Although the ALJ briefly summarized some of the medical records and

---

[3]The ALJ also stated in the findings section of his decision that Plaintiff's "allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision."  (R. 19).

6

provided reasons for why he credited (or discounted ) certain medical opinions, it is not obvious from his recitation of the record or otherwise whether he fully recognized Plaintiff's subjective complaints or why he rejected certain of them but not others. There is absolutely no explanation of how Plaintiff's testimony was inconsistent with the medical evidence of record. Thus, while the ALJ acknowledges the applicable case law, his decision fails to incorporate the analysis required by those cases. Further, the post-hoc argument by the Commissioner does not suffice; the credibility decision is for the ALJ to make in the first instance. Consequently, the ALJ's conclusory justification for rejecting Plaintiff's testimony regarding pain and other subjective complaints is inadequate and warrants reversal. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

By her second claim, Plaintiff challenges the ALJ's residual functional capacity (hereinafter "RFC") finding on two grounds. Plaintiff argues first that the ALJ erred by failing to consider her nonexertional impairments and in concluding that her ability to perform sedentary work[4] was not compromised by such. In her view, substantial evidence supports her claimed nonexertional impairments of back, shoulder and chest pain, fatigue, dizziness, leg cramps, headaches, and medicinal side effects. As set forth above, I agree that the ALJ failed to adequately address her subjective complaints and explicate his reasons for discounting them. For this reason, I find that the ALJ's conclusion that Plaintiff's ability to

---

[4]Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967. Periods of walking and standing generally should total no more than about two hours in an eight-hour workday, and sitting should generally total about six hours in an eight-hour workday. SSR 83-10, 1083 WL 31251, at * 5 (S.S.A.).

7

perform sedentary work was not compromised by her nonexertional impairments is unsupported and needs further consideration.

As a second component of this claim, Plaintiff argues that the ALJ's RFC finding is contradicted by the opinions of her treating physicians, each of whom opined that she was capable of performing less than the full range of sedentary exertional work. In particular, Plaintiff refers to the disability opinions and/or the RFC opinions of Suresh A. Patel, M.D. (primary physician); Vivek Nag, M.D. (cardiologist); and Niran P. Sharma, M.D. (primary physician). Plaintiff also challenges the ALJ's finding that she could perform her past job as a credit card clerk, contending that there is no evidence that she could perform that job given her nonexertional limitations. (Doc. 13 at 12-15). The Commissioner responds generally that the ALJ provided adequate reasons for rejecting the medical opinions that were inconsistent with his RFC finding. (Doc. 14 at 4-7).

Residual functional capacity ("RFC") is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Lewis, 125 F.3d at 1440. Thus, in determining a claimant's residual functional capacity, an ALJ must consider the opinions of a claimant's physicians. When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 416.927(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or

reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ in this case determined that Plaintiff retained the ability to perform sedentary exertional work. (R. 19-20). He determined further that Plaintiff's exertional capacity for sedentary level work was not significantly compromised by any nonexertional limitations. Id. at 16. In making these determinations, the ALJ specifically considered the RFC opinions of Dr. Nag, Dr. Sharma, and the two state agency physicians. Dr. Nag, a treating cardiologist, completed three forms on February 7, 2002. In the first, he responded to questions concerning Plaintiff's ability to do work-related, physical activities. He opined that Plaintiff could (1) occasionally lift and carry less than ten pounds and could not lift any amount of weight frequently, (2) stand and/or walk for less than two hours in an eight-hour day and sit without limitation, (3) not push or pull objects heavier than ten pounds, (4) occasionally climb but could not never balance, kneel, crouch, crawl, or stoop, and (5) have only limited exposure to temperature extremes and humidity/wetness. (R. 216). On another form, he indicated that Plaintiff would be able to perform sedentary work, which the form defined as lifting no more than ten pounds at a time and occasionally lifting small articles like files, ledgers and small tools and sitting for six hours in an eight-hour workday. Id. at 219. Then, on a form containing classification levels from the American Heart Association, Dr. Nag circled functional capacity "Class I" and therapeutic classification "Class B."[5]  Id. at 220. The ALJ found these opinions contradictory, and he concluded that:

---

[5]Class I was defined as "[p]atients with cardiac disease but without resulting limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea, or anginal pain." (R. 220). Class B was defined as "[p]atients with cardiac disease whose ordinary physical activity need not be restricted, but whose should be advised against severe or competitive physical efforts." Id.

9

> The undersigned presumes that although Dr. Nag gave
> conflicting opinions about the claimant's physical capacity,
> the opinions regarding Class I and Class B should be given
> the greatest weight. The reason for this is that the doctor
> should understand these terms since he deals with them as
> part of his medical practice on a daily basis.

Id. at 18.

Dr. Sharma, one of Plaintiff's treating primary physicians, completed two forms addressing her functional capacity. On May 14, 2002, he opined that Plaintiff could (1) sit without limitation, (2) stand and walk for two hours in an eight-hour day, (3) climb, carry and reach for one hour in an eight-hour workday, (4) lift/carry ten pounds frequently, and (5) occasionally be exposed to extreme heat, cold, humidity, dust and noise but could never be exposed to chemicals, fumes/odors, or height.[6] Id. at 228. Six months later, Dr. Sharma reported that Plaintiff could (1) sit for one hour at a time and for four hours total during an eight-hour day, (2) stand and walk for one hour at a time and for three hours total (each) during an eight-hour day, (3) lift/carry up to ten pounds, (4) frequently bend, (5) occasionally squat, crawl, and reach above shoulder level, (6) never climb or be exposed to unprotected heights, and (7) have only limited exposure to moving machinery, marked changes in temperature or humidity, driving automotive equipment, dust, fumes, and gases. Id. at 279-82. The ALJ discounted Dr. Sharma's disability opinion, finding that if Plaintiff had the limitations reported in May 2002, she could still perform sedentary work. He also discounted Dr. Sharma's subsequent opinion with respect to Plaintiff's ability to sit, explaining that there was no basis for the restriction because there was no change in Plaintiff's condition. Id. at 18.

---

[6]Based on these restrictions, Dr. Sharma was of the opinion that Plaintiff was unable to work from May 14, 2002, through May 14, 2003. (R. 228).

10

The ALJ likewise discounted the reports of the non-examining, state agency doctors. By their assessments, Plaintiff could perform light exertional work with certain postural and reaching restrictions. (R. 142-49, 230-37). The ALJ acknowledged his duty to consider these opinions, but he did not "fully agree" with these assessments in light of more updated medical evidence indicating continuing symptoms and more recent assessments of Plaintiff's RFC.

Initially, I agree with Plaintiff that, at a minimum, the ALJ was obliged to also consider the treatment notes and opinions of Dr. Patel. See (R. 151- 81). By this doctor's assessment, Plaintiff was disabled as of her (then) last office visit, June 5, 2001, and was expected to be disabled until June 1, 2002. (R. 168-69). In Dr. Patel's opinion, Plaintiff suffered ASHD, hypothyroidism, hyperlipidemia and left shoulder impingement resulting in significant limitations related to walking, bending, squatting climbing, reaching and crawling, lifting and carrying, pushing and pulling, and fine manipulation. Id. The decision gives no indication that the records or the opinions of this doctor were even reviewed much less considered by the ALJ. While the Commissioner urges that this opinion was irrelevant as it was rendered prior to the application date, it was made only one month before Plaintiff applied for benefits and should have been addressed. The ALJ's failure to specify the weight given to Dr. Patel's opinions or the reasons for discounting them, in whole or in part, constitutes reversible error. See MacGregor, 786 F.2d at 1053.

As for the ALJ's handling of the reports and opinions of Dr. Nag and Dr. Sharma, even assuming the ALJ gave a fair reading to the records of these doctors and could discount their opinions regarding disability, it appears that the ALJ determined the Plaintiff's RFC in this case by picking and choosing certain aspects of the treating physicians' opinions while ignoring other parts of their opinions. This is demonstrated by the fact that each of these

11

treating physicians (as well as the non-examining) assessed nonexertional limitations that the ALJ failed to mention, including postural limitations, reaching limitations, and environmental restrictions.  See, e.g., (R. 142-49, 168-70, 216-20, 226-29, 230-37, 279-82).  The ALJ erred in doing so.  See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence).  This error also warrants remand.[7]

Finally, on remand the ALJ should more fully consider and better address any conclusion that Plaintiff could perform her past work as a credit card clerk.  On this decision, the ALJ summarily concluded that Plaintiff's past relevant work as a credit card clerk was sedentary exertional work and that Plaintiff retained the functional capacity to perform such work.  The ALJ, however, failed to state whether Plaintiff could perform her past work as she performed it or as the work was performed generally in the national economy.  The distinction is important because the exertional level of that job would not be considered sedentary in light of the walking and standing requirements described by Plaintiff.  See (R. 39-41, 104).  Moreover, to the extent the ALJ relied on the job as described in the DOT, i.e., a credit card clerk in the retail industry, it differs significantly from the work that Plaintiff described.  See DOT 209.587-014 (4th ed 1991).

---

[7]Administrative hearings before ALJs are non-adversarial proceedings and the ALJ is obliged to develop a full and fair record even when the claimant has counsel.  Upon remand, the ALJ should carefully review the findings of all the treating doctors.  In my view, the RFC statements of Dr. Nag, all rendered on the same date, should be read as intended to be consistent one with the other.  Each asks a different question and I cannot read them to permit the ALJ to so easily discount the specific limitations imposed by this doctor.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
1st day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record

13